## THE TAMMERLANE.

## LAMBOS v. THE TAMMERLANE.

*(District Court, N. D. California. October 5, 1891.)*

1. SHIPPING—PERSONAL INJURIES TO SEAMEN—DANGEROUS PREMISES.
   A seaman who was ordered to go into the hold, instead of waiting for a ladder, as he was told to do, and notwithstanding there were cleats upon a stanchion extending from the main deck to the between-deck, which afforded him a safe and easy descent, swung himself through the main hatch, and stepped upon the cover of the hatch of the between-deck, which, having been left resting against the stanchion, and not being fastened, as it usually was, turned, and caught him. It was not shown how the cover happened to be left in such a position. *Held*, that no negligence was shown for which the ship was liable.

2. SAME—MEDICAL EXPENSES—END OF VOYAGE.
   The seaman, having been well cared for and treated during the voyage, could not recover medical expenses incurred in consequence of such injuries after its termination and his return to the port of discharge.

In Admiralty. Libel *in rem* to recover damages for personal injuries caused by the alleged negligence of the master.

*Wm. Hoff Cook*, for libelant.

*Andros & Frank*, for claimant.

Ross, J. This is a libel *in rem* against the bark Tammerlane, her tackle, apparel, and furniture, to recover compensation for an injury sustained by the libelant on board the bark while in the discharge of his duties as seaman, and for alleged neglect and maltreatment of the officers thereafter, and for medical expenses incurred by him after the

termination of the voyage. At the argument of the cause it was conceded that the allegations in respect to the neglect and maltreatment of libelant subsequent to the accident were not sustained by the evidence. The claim for damages against the vessel growing out of that cause is therefore eliminated from the case, and there remain for consideration but two questions: *First*, whether the negligence by which the accident happened entitles the libelant, by any recognized principles of maritime law, to compensation from the ship or her owners for the injury; and, *secondly*, whether the obligation of the ship to cure the libelant of the injury extends beyond the termination of his contract of service and his return to the port of discharge.

The first of these questions was carefully considered by Judge BROWN in the case of *The City of Alexandria*, reported in 17 Fed. Rep. 390, and the conclusion there reached, after a review of the authorities, that, by the maritime law, ancient and modern, a seaman, in case of an accident received in the service of the ship, is entitled to medical care, nursing, and attendance, and to cure, so far as cure is possible, at the expense of the ship, and to wages to the end of the voyage, and no more; that this right of the seaman is without reference to any question of ordinary negligence of himself or his associates, and is neither increased nor diminished by the one or the other,—the only qualification arising from the willful and gross misconduct of himself or associate, in which case the expense may be charged against the wages of the wrong-doer. Accordingly, in that case, where the cook, who was the libelant, went down the fore-hatch in the morning before light, by the direction of the steward, and was not sufficiently notified of the half-open hatch below, and, in consequence, fell through, and was injured, and was subsequently treated and cared for at the ship's expense, and received his wages to the end of the voyage, and thereafter filed a libel to recover damages for permanent injuries, the libel was dismissed. The case for the libelant there was much stronger than here; for in the present case the accident to the libelant was caused in large part, if not entirely, by his own carelessness. It occurred on a whaling voyage, and, being ordered by the boat-header, one Wilbur, to go from the main deck into the hold for some purpose, the libelant, in doing so, swung himself down through the main hatch into the between-decks, and stepped upon the edge of the forward half cover of the hatch of the between-decks, which thereupon turned, and caught him, inflicting the injury of which he complains. The cover was raised at the time, and rested against the stanchions extending from the main deck to the between-decks; but it was not fastened, as it usually was. How it happened to be left unfastened on this occasion does not appear. There were cleats upon the stanchion, to be used in going from the main deck to the between-decks, and a ladder was also sometimes used for the same purpose. The case further shows, however, that the men in going below not infrequently adopted the means used by the libelant in the present instance, which was doubtless more expeditious, but not so safe. The cleats upon the stanchion were for the very purpose, and afforded a safe and easy way,

of going down. Moreover, in this particular instance, it appears that Wilbur instructed the libelant to wait until he got a ladder for him, and, as Wilbur turned around to get the ladder, libelant swung himself down, placing his feet upon the upturned hatch, with the result already stated. That in doing so libelant was guilty of negligence does not admit of doubt. No negligence is shown on the part of the ship or its owners, unless they are to be held responsible for the fact that the cover was not fastened; for good and safe means for going below were provided, at least by the cleats upon the stanchion. As has been said, it does not appear how the cover happened to be left unfastened. If it be assumed that it was by reason of the neglect of some of the ship's company other than the libelant, still such assumed fact would not entitle the libelant to recover against the ship or its owners. "By the maritime law," said Judge Brown in the case already cited, "the mere ordinary negligence of the seaman, though that be the sole cause of the accident, makes no difference in his right to be cured at the ship's expense, and to his wages to the end of the voyage. And, as his own negligence does not debar him from these rights by the maritime law, so, conversely, these rights are in no way extended, though his hurts have arisen by the negligent acts of others of the ship's company. In effect, the maritime law makes no account of mere ordinary negligence in such cases. More or less negligence is, in fact, to be expected; and the rules, long established, as regards the relief to be afforded, are irrespective of such negligence, whether by the seamen or others. When the owners perform all that can be reasonably done on their part, by the proper equipment of the vessel for the voyage, and the selection of competent officers and a sufficient crew, no reason exists in natural justice for holding them or their vessel answerable for the accidents to seamen which happen during the voyage, beyond the limits which the maritime law has established."

Another case in point is that of *Lloyd* v. *The Theresina*, 31 Fed. Rep. 90, where the libelant, who was a stevedore, stepped on the cover of a scuttle in the deck of the ship, when the cover tilted, precipitating libelant through the scuttle into the hold, causing an injury, for which suit was brought. The evidence indicated that the scuttle was a proper one, of a kind in common use, and that the accident was probably due to a temporary misplacement of the cover, the cause of which did not appear. The court held that no negligence on the part of the ship-owner was proved, and dismissed the libel. In the present case I think the libelant is not entitled to recover compensation for the injury sustained by him.

It is insisted, however, that he is entitled to recover $25 for medical expenses incurred by him after the termination of the voyage, and his return to the port of discharge. The service for which this charge is made was an operation upon one of the libelant's kidneys, rendered necessary, as is claimed, by the injury he received. The proof to sustain this claim is by no means satisfactory; but, assuming that the disease of the kidney was occasioned by the injury he received on board the bark, it does not follow that the medical services rendered him are

a proper charge against the vessel. The rule seems to be that the obligation of a vessel to support and cure seamen taken sick or receiving injuries in the service of the ship does not extend beyond the termination of the seaman's contract and his return to the port of discharge. *Nevitt v. Clarke*, Olcott, 316; *The Atlantic*, Abb. Adm. 451, 476; *The City of Alexandria*, supra; *The J. F. Card*, 43 Fed. Rep. 92. That the libelant was well cared for and treated during the voyage is shown by the evidence, and was conceded at the argument.

The libel is dismissed, at libelant's costs.